Dykman, J., (dissenting.)
This is an action for the recovery of compensation for the pecuniary injuries resulting from the death,of the plaintiff’s intestate, ensuing from the wrongful act or neglect of the defendant. The defendant in this action is the proprietor of Glen Island, in Long Island sound, near Hew Rochelle, which he appropriates to the use of the public for hire as a resort for pleasure, and among other devices for the amusement of his patrons he has prepared a bathing-place, where they can swim and disport themselves in the waters of the sound. In the place so set apart for bathing purposes there was erected a frame similar to a gallows frame, from the crossbeam of which depended five ropes, three with rings and two sustaining a bar, which were "designed for use by persons in the water as instruments of diversion. The cross-beam was a timber, 6 inches square, and it was 10 or *291 12 feet above the water at high tide, and 17 or 19 feet at low water, and some ■strips of boards were nailed on the upright standards or legs. About the mid>dle of the month of July, 1885, the deceased man visited G-len Island with his family, to spend the day in pleasure, and went into the water at the bathing-place after the payment of the customary charge. I-Ie ascended the frame structure, and plunged into the water, and struck his head against a stone, and fractured his skull, and he died the same evening from the effect of the injury. The negligence charged against the defendant is want of care in the preparation of the bathing grounds, and in permitting the use of the frame ■structure for diving from its top.
Much of the controversy upon the trial clustered round the structure, and the plaintiff introduced testimony tending to establish the habitual use of the same in the manner it was used by the decedent, and that many persons swam out to it, and leaped from it into the water, in his presence, on that day, with •safety, in the same manner he undertook to do. The defendant strove to prove an entirely different purpose in the erection of the structure, and its ■appropriation and use in connection with the rings and bar only. When the case was submitted to the jury these antagonistic theories were fully presented by the charge of the trial judge, which was so favorable to the defendant as to induce his counsel to insist that consistency required him to direct •a verdict for his client.
In the charge the judge spoke of the machine as follows: “It was not adapted to diving from the top of it, and this accident happened because the ■deceased dove from the top. I will say this to you, that, although this contrivance was manifestly not built for the purpose of diving from its top, Starin cannot be held liable for an occasional unpermitted use by bathers of "the structure for the purpose of diving from its top, headforemost, into the water. "VVhat, then, is the stand-point from which you should view the case? Mr. Starin may adopt this contrivance for the purpose of diving from it just •as well as if he had built it for that purpose, and that is the point that I have •concluded to send to you. If there be evidence that Starin and his men in charge generally invited the bathers to go upon the top of this machine and dive head-foremost into the water, and that invitation was generally accepted, even though the structure was built for another purpose, then Starin is just as liable as if he had built it for the purpose of diving from it in the first instance.» ■On that question these parties differ. It is a question that you have got to ■settle. The plaintiff has given proof tending to show that diving from the top of this machine continued for years; and that the instructions to the employes were not to permit diving when it was less than three-quarter tide. If Starin adopted this machine, if he omitted to furnish a safe place for the purpose for which he adopted it, or to have persons at hand- there to warn people who were ignorant of the danger, then you will say whether the first branch of this action is made out,—whether Starin omitted to do something that he ought to have done for the safety of the people whom he invited to ■dive from this machine. If you find against the plaintiff upon that question, that is the end of the action; but if you find for the plaintiff upon that point, then it was the duty of the deceased to furnish use of his senses in protecting himself from danger. Therefore if he, as a prudent, vigilant man, could see how deep the water was, and that it was too shallow to be used for the purpose of diving in that way, or if it was by reason of his omission to look that he did not see the danger that was apparent, in either case the plaintiff fails. If he could have seen by the bathers standing in the water that it was shallow, and he omitted, to look and judge of the facts that were existing round "him when about to take a plunge of that kind, he was guilty of negligence. ” Then at the close of the charge, which placed before the jury the questions involved as we have seen, the following requests and rulings were made; “ Counsel for Defendant. I ask you to charge that the defendant is not a guar *292 antor of the safety of the structure for any other purpose than that for which it was erected. ” So charged. “ Second. That the defendant is not a guarantor that the structure was safe to dive from the top of it. ” So charged.. “Third. I ask your honor to direct a verdict for the defendant.” Refused,, and defendant excepts. “Fourth. To charge that if the jury believe from the-evidence that the structure was built simply to support trapeze and rings, and. to enable bathers to use them, that the plaintiff cannot recover. The Court.. I so charge. I said that unless there be proof in the case that this was used, adapted, and adopted for a different purpose, there would be no action; but-if by a general, universal, or subsequent universal invitation people were asked to dive from that thing, the defendant is just as liable as if he had built it for the purpose. Mr. Goodrich. I pass over several of these requests to come to this one: Fifth. That the deceased was not at liberty to place himself in a position where he might have known he would be more or less exposed to danger, without taking means to ascertain whether such danger existed. The Court. Don’t you think I have covered that? Mr. Goodrich. I don’t think you did. The Court. I said that if he could have seen by looking at other bathers standing in the water that it was dangerous, or if he might have seen had he looked, and he did not look, the plaintiff cannot recover. I went further than your proposition. Mr. Goodrich. I ask your honor to charge that the structure from which the intestate plunged was clearly not designed to be used in such manner as he used it. The Court. It. was not built for that purpose; no doubt of that. Mr. Goodrich. I don’t think your honor goes quite so far as I ask you to. I ask you to charge that that structure from which Hinz plunged was clearly not designed to be used) jn the manner in which he used it. The Court. Well, I will charge that. There is no doubt of that. I have said to the jury that the machine gives its-own evidence as to what its purpose was, but by general invitation they might have changed its purpose. Mr. Goodrich. Then I ask your honor again to direct a verdict for the defendant. ” Refused. Defendant excepts. “I ask your honor to charge that there is no evidence at all in this case that there was no stone or rock exposed on the day of the accident. The Court. I will leave that to the jury to say.” Defendant excepts. “Mr. Goodrich. I ask your honor to say that there is no evidence of that. The Court. I will not say as a matter of law that there is no evidence. I leave what there is to-the jury, and I do not want the jury to understand from that that my opinion is that there is no evidence. I don’t want an opinion any way. I leave it to them. Mr. Goodrich. I ask your honor also to charge that there is no-evidence that Starin knew that any person dove from this machine. The-Court. I will not charge any differently from what I have charged. ” Exception taken. “I will agree with you that Starin is not personally implicated in the ease, but his superintendent, and the persons who controlled — Mr. Goodrich. Then I ask your honor to charge that there is no evidence in this case that any one of Starin’s employes ever saw anybody dive-from it.” Refused. Defendant excepts.
The charge thus laid a heavy load upon the plaintiff, for the jury was not. permitted to make a verdict in his favor unless the defendant by general invitation ‘had changed the original design of the frame structure, and introduced its use for the purpose to which the decedent appropriated it. Yet the-burden was successfully sustained, and the fact required from the jury was found in the plaintiff’s favor, as the verdict proves. There was no exception, to the charge upon that subject, and it was assumed that there was testimony in the ease sufficient to justify the submission of the question of fact to the-jury, and so indeed there was, and the verdict is sustained by the evidence. Then we have this ease: The intestate of the plaintiff, at the invitation of the defendant, and for his benefit, entered upon his premises, went into the bathing-place, and used the structure as he saw other bathers use it with. *293 ¡safety, without warning or notice of danger; and those facts make a case against the defendant, and sustain the judgment in question. The owner of real property is bound to the use of care and diligence to keep his premises in •a safe condition for the use of persons who come upon the same for a purpose beneficial to him, and such persons have a right to assume the safe condition of such premises while appropriating the same to the purpose for which they were customarily used. Shear. & R. Neg. §§ 498, 499a. The same doctrine is enunciated by the court of appeals in the case of Camp v. Wood, 76 N. Y. 92. The exceptions taken present no error, and the judgment and order appealed from should be affirmed, with costs.